In the Matter of ALEXANDER THEOHAROUS, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, December 7, 1992

### APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn *(Mark F. DeWan* of counsel), for petitioner.

*Alexander Theoharous,* West Palm Beach, respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was charged with one

allegation of professional misconduct. The Special Referee sustained the charge after a hearing at which the respondent failed to appear.

Charge One alleged that the respondent conspired to obstruct justice by attempting to bribe a witness in a criminal proceeding and to induce her to fail to appear to give testimony.

The respondent's client and an alleged accomplice were arrested in New York County on or about July 1987 on charges of raping, sodomizing, and sexually abusing a citizen of Ireland. They were subsequently indicted on those charges.

On or about January 2, 1988, the respondent was asked by a former client to represent the client in question in the pending criminal proceeding in New York. The respondent indicated that he required a $3,000 legal fee before discussing the matter further. At an arranged meeting, the client in question told the respondent that he was willing to pay the complainant not to testify at his trial. The respondent informed the client that such a proposal was illegal and would constitute bribery, tampering with a witness and obstruction of justice.

In a subsequent meeting with the former client and the client in question, the respondent stated that he had conceived a scheme to disguise the bribery of the complainant while achieving the same result. The respondent proposed retaining an Irish attorney to approach the complainant's father and offer to represent the daughter in a civil action against his client. The respondent further proposed that the Irish attorney would negotiate a settlement of the civil action, execute a general release from all liability, and obtain the complainant's agreement not to appear in a criminal matter. The complainant would then be accorded a sum of money by his client, provided that the criminal charges against him were dismissed.

During the course of a subsequent meeting with his client, in or about March 1988 the respondent accepted $1,500 from him as payment for respondent's scheme to bribe the complainant. On or about March 16, 1988, the respondent met his client in New York and accepted an additional $1,500 as payment for the respondent's scheme to bribe the complainant.

In or about April 1988 the respondent told his client that he would travel to Ireland to retain an Irish attorney to carry out the respondent's scheme. At an arranged meeting on or

about April 18, 1988, the respondent met his client in New York and accepted $10,000 from him. On or about April 18, 1988, the respondent met an Irish attorney to whom the respondent had been previously referred, and asked him to contact the complainant's father with an offer to represent him in a civil action against the respondent's client. The respondent informed the attorney that there was about $40,000 available to the complainant's family and that the attorney's fees and expenses would be paid if the proposal was accepted. The respondent further explained that if the complainant did not testify at his client's criminal trial in New York, that sum would be placed in escrow for her. In the event the criminal charges were dismissed, the money would be released to her.

On or about April 20, 1988, the respondent paid the Irish attorney approximately $1,000 upon learning that the latter had contacted the complainant's father.

On or about May 10, 1988, the respondent accepted an additional $4,000 from his client in New York. The respondent again traveled to Ireland and, on or about May 12, 1988, met with the Irish attorney and the complainant's father. The respondent asked the complainant's father if he had decided to accept the proposal, which would have the effect of saving the complainant the trauma of testifying at a trial and being subject to cross-examination.

On or about May 13, 1988, the respondent paid the Irish attorney about $1,500. The respondent had a meeting in New York with his client on or about May 30, 1988, and discussed his efforts to persuade the complainant not to testify. The respondent again traveled to Ireland and met with the complainant's father on two occasions, between June 1 and June 8, 1988, in order to discuss the subject proposal.

In or about July 1988 the respondent prepared a document, addressed to Assistant District Attorney Lisa Mourning of the New York County District Attorney's office, which purported to be an affidavit for the complainant's signature, whereby she would withdraw the charges against his client and his client's alleged accomplice.

The respondent again traveled to Ireland, where the complainant's father rejected his proposal on or about July 21, 1988.

Between March 1988 and July 1988 the respondent accepted a total of about $19,000 from his client as fees and expenses

for the respondent's part in conceiving and attempting to execute his proposed bribery scheme.

After reviewing all of the evidence adduced, we find that the Special Referee properly sustained the charge of misconduct against the respondent. Accordingly, the petitioner's motion to confirm the report of the Special Referee is granted.

In determining the appropriate measure of discipline to impose, we have taken into consideration the absence of mitigating circumstances offered on the respondent's behalf. The uncontroverted evidence establishes that the respondent conspired to obstruct justice by attempting to bribe the complaining witness in a criminal proceeding, in which the defendants were charged with rape, sodomy, and sexual abuse, in order to induce that witness to fail to appear and testify at the trial. Such fraudulent and deceitful conduct is clearly prejudicial to the administration of justice and adversely reflects on the respondent's fitness to practice law.

The respondent is guilty of serious professional misconduct which warrants his disbarment. Accordingly, the respondent is disbarred, effective immediately.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and EIBER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Alexander Theoharous, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent, Alexander Theoharous, is commanded to continue to desist and refrain (1) from practicing law in any form, either as principal or as agent, clerk or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.